UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALISON N. LEARY and TIMOTHY M. LEARY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BP LUBRICANTS USA, INC.; and CARSENSE, INC.,<br><br>Defendants. | Civil Action No.<br><br>CLASS ACTION<br><br>COMPLAINT<br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Alison N. Leary and Timothy M. Leary ("Plaintiffs") bring this class action complaint against BP Lubricants USA, Inc. ("BP Lubricants") and CarSense, Inc. ("CarSense") (collectively, "Defendants"). Plaintiffs allege Defendants sell a written warranty that violates the Magnuson-Moss Warranty Act ("MMWA") because the warranty contains an illegal tying provision.

2. The MMWA prohibits tie-in sales provisions. A tie-in sales provision is a provision that requires a consumer to buy an item or service from a particular company to keep warranty coverage.

3. The legislative history of the MMWA specifically clarifies the intent of Congress that: "no automobile manufacturer may condition his warranty of an automobile on the use of a named motor oil or on the use of its own automobile parts unless he shows that any other motor oil or automobile parts which are available will not function properly and will not give equivalent performance." H.R. Rep. No. 93-1107 at 36-37 (1974). The intent of the MMWA is to preclude,

for example, an arrangement that conditions automobile warranty coverage on the use of branded motor oil, unless the motor oil is provided without charge under the terms of the warranty or unless no other motor oil will function properly and provide equivalent performance.

4.   In 2011, the Federal Trade Commission ("FTC") issued a public request for comments concerning interpretations of the MMWA tying provisions. Defendant BP Lubricants' Managing Attorney, T. Kevin Sheehy, responded to the FTC's requests for comments. On behalf of BP Lubricants, Mr. Sheehy wrote:

> It is well established that the practice of tying is anti-competitive by preventing competing sellers from selling the 'tied' product to purchasers and is also harmful to the consumer by foreclosing other sources of supply for such products. *Northern Pacific Ry. Co. v. United States,* 364 U.S. 1, 6 (1958). In such cases the consumer is restricted from buying a competing product at a better price or from buying a competing product that is perceived to have superior performance.
>
> BP is concerned with the apparent trend in the automotive lubricant marketplace of automobile manufacturers implying or creating confusion about the required use of a branded or licensed lubricant in order to retain warranty coverage for an automobile. …
>
> The intent of the Act is not served if consumers are not provided with assurance that they are not taking a gamble with warranty difficulties if they choose a lubricant other that the lubricant brands designated by manufacturers.

BP Lubricants and Mr. Sheehy then urged the FTC to improve the effectiveness of the MMWA's tying prohibitions. *See* Comments Submitted on Behalf of BP Lubricants USA Inc., FTC Matter No. P114406, attached hereto to as Exhibit 1.

5.   Defendants here are engaging in precisely the same unlawful behavior that BP Lubricants and Mr. Sheehy complained to the FTC about. That is, Defendants sell automobiles with warranties that require consumers to use only premium Castrol motor oils, otherwise the warranty is void. Defendants' warranty is a per se violation of the MMWA's tying prohibition.

Plaintiffs seek damages, injunctive relief, as well as attorneys' fees and costs.

## JURISDICTION

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because the action is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure and the amount in controversy exceeds $5,000,000. The Court has personal jurisdiction over the parties because Plaintiffs reside in this district and Defendants conduct substantial business in this district, have had systematic and continuous contacts with this district, and have agents and representatives who can be found in this district. In addition, the Court has subject matter jurisdiction over the claim set forth in this complaint pursuant to 28 U.S.C. § 1331 because the claim raises a federal question.

## VENUE

7. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to Plaintiffs' claim occurred within this district.

## PARTIES

8. Plaintiffs Alison N. Leary and Timothy M. Leary are married. They reside in West Chester, Pennsylvania. On June 16, 2016, Plaintiffs purchased a 2015 Volvo V60 Premier from CarSense. Plaintiffs purchased the vehicle for $30,545.91. As part of the purchase price of the vehicle, CarSense also offered Plaintiffs the "Engine for Life Protection Program," which is a limited warranty that covers vehicle engines from mechanical failure or abnormal wear for ten years or 300,000 miles, whichever occurs first.

9. Defendant BP Lubricants is a conglomerate that provides its customers with fuel for transport, energy for heat and light, lubricants to keep engines running, and petrochemicals used to manufacture a wide array of products. BP Lubricants acquired the Castrol motor oil brand

in 2002. It today produces and sells Castrol products in more than 150 countries. BP Lubricants also provides consumers with limited written automobile warranties. BP Lubricants maintains its corporate headquarters in Wayne, New Jersey, and does a substantial amount of business in Pennsylvania.

10. Defendant CarSense operates as a dealer for used cars and trucks. The company also provides oil and filter changes. CarSense maintains its corporate headquarters in Uwchland, Pennsylvania. It does business at four locations in Pennsylvania and one location in New Jersey. As of January 9, 2017, Car Sense is a subsidiary of Penske Automotive Group, Inc.

## BACKGROUND FACTS

11. CarSense sells used vehicles to consumers at four brick and mortar locations in Pennsylvania and at one location in New Jersey. CarSense also advertises vehicles on the internet.

12. CarSense uses its "Lifetime Engine Guarantee" to market and sell consumers vehicles. CarSense also uses the "Castrol Engine Warranty" to market and sell consumers vehicles. Under these warranties, Car Sense and BP Lubricants cover the engine in vehicles sold by Car Sense to consumers from oil related mechanical failure or abnormal wear for 10 years or 300,000 miles, whichever occurs first, so long as consumers change the motor oil in their vehicles every 4 months or 4,000.

13. The warranty arrangement between CarSense and BP Lubricants is a mutually beneficial one. CarSense is better able to market and sell vehicles to consumers when the vehicles are backed by the warranties. CarSense also provides consumers with motor oil change services, so it profits when consumers return to CarSense and pay for oil changes in their vehicles every four months, or 4,000 miles. BP Lubricants profits because the warranties require consumers to use its motor oil in order for the warranties to remain in force.

14. Plaintiffs purchased a vehicle from CarSense on June 16, 2016. As part of the purchase price of the vehicle, Plaintiffs were provided the "Lifetime Engine Guarantee" from CarSense as well as the "Castrol Engine Warranty." These warranties were an important factor in Plaintiffs' decision to purchase a vehicle from CarSense and to pay the price paid for the vehicle. In addition to the vehicle, Plaintiffs believed they were purchasing peace of mind because the vehicle was backed by the warranties.

15. After purchasing the vehicle and warranties, Plaintiff Timothy M. Leary took the vehicle to the Tolsdorf Oil Lube Express located in Exton, Pennsylvania to have the vehicle's motor oil changed. Plaintiff Timothy M. Leary was informed by the Tolsdorf Oil Lube Express service technician that since his vehicle was purchased at CarSense and backed by the warranties that he was required to use Castrol motor oil and that that the oil change would cost him approximately $40.00 more than if he used a comparable non-Castrol synthetic product. Plaintiff Timothy M. Leary did not want to risk voiding the warranties so he paid approximately $40.00 extra for the Castrol motor oil to be used in the oil change service.

16. Under the MMWA, Defendants have created an illegal tying arrangement by requiring Plaintiffs to change the motor oil in their vehicle every 4,000 miles or 4 months with only Castrol products. Plaintiffs are paying more for Castrol products than what they would pay for substantially similar or possibly superior motor oils.

## CLASS ACTION ALLEGATIONS

17. Plaintiffs seek to certify, and to be appointed as representatives of, the following class ("Class"):

> All consumers who purchased the Lifetime Engine Guarantee or the Castrol Engine Guarantee in the United States since May of 2011. Excluded from the Class are Defendants, their respective parents, subsidiaries, affiliates and employees.

18.     This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a.     Numerosity: The Class includes tens of thousands of individuals and is so large that joinder of all its members is impracticable.

b.     Typicality: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased the warranties at issue during the time period at issue. Class members were harmed in a similar fashion by Defendants' violation of MMWA's tying provisions.

c.     Adequacy: Plaintiffs are adequate representatives of the Class because they purchased the warranties at issue and have paid extra to change the motor oil in their vehicle with Castrol products. They have no interest that is in conflict with the Class, are committed to the vigorous representation of the Class, and have engaged experienced and highly qualified class action attorneys to represent the Class.

d.     Commonality: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to whether the warranties contain illegal tying provisions and if so what are the proper remedies for Plaintiffs and the Class.

19.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class. Separate lawsuits would establish incompatible standards to govern Defendants' conduct.

20.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only

individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint has applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

21. Plaintiffs' counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Rule 23(g).

## COUNT I

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310, *et seq.*

22. Plaintiffs repeat and re-allege each of the allegations in the foregoing paragraphs as if fully set forth herein.

23. Congress enacted the MMWA in 1975 in response to widespread complaints from consumers that many warranties were misleading and deceptive, and were not being honored. *See* H.R. Rep. No. 93–1107 (1974). To remedy this problem of deception and failure to honor warranties, the MMWA imposes civil liability on any "warrantor" for, *inter alia*, failing to comply with any obligation under a written warranty and/or implied warranty. *See* 15 U.S.C. § 2310(d)(1). MMWA authorizes a "suit for damages and other legal and equitable relief." *Id.* MMWA

authorizes the award of attorneys' fees and expressly authorizes class actions. 15 U.S.C. § 2310(e).

24. Defendants are each a "supplier" and "warrantor" within the meaning of Section 2301(5) of the MMWA. Plaintiffs and Class members are "consumers" within the meaning of Section 2301(3) of the MMWA.

25. The amount in controversy exceeds the sum or value of $25.

26. The warranties at issue are in writing as is required to satisfy the disclosure requirements and minimum federal standards under the MMWA.

27. Among the MMWA requirements and minimum standards is an express prohibition against any tying arrangement, the MMWA states:

> No warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name…

15 U.S.C. § 2302(c). "Section 102(c) prohibits tying arrangements that condition coverage under a written warranty on the consumer's use of an article or service identified by brand, trade, or corporate name unless that article or service is provided without charge to the consumer." 16 C.F.R. § 700.10(a).

28. This anti-tying provision was intended by the legislature to "prohibit[] any warrantor of a consumer product from conditioning his warranty on the consumer using in connection with such product, any article or service which is identified by brand, trade, or corporate name." H.R. Rep. 93-1107 (1974). Congress further expressed its purpose and intent behind Section 102(c) as "prohibiting tying arrangements in warranties that effectively restrict the consumer's ability to choose among competing brands of products or services that can be used in conjunction with the warranted products." Interpretations of the Magnuson-Moss Warranty Act,

45 Fed. Reg. 36112, 36114 (July 13, 1977) (codified at 16 C.F.R. §700).

29. The warranties both are conditioned on a consumer's use of Castrol branded motor oil. Castrol motor oil is not provided to consumers without charge. There are several other brands of motor oil that are substantially similar to Castrol motor oil. The Automotive Oil Change Association, responding to the FTC's requests for comments on the MMWA, stated a warrantor's denial of warranty coverage based on the allegation that a consumer's use of a particular brand of motor oil is a "perfect example" of a violation of MMWA.[1] The AOCA stated that it has "never found evidence of a single case demonstrating that a non-manufacturer-authorized or licensed motor oil caused engine damage."[2] The AOCA also quoted Dr. R. Scotti Lee, VP of Technical Support for Oil Changers, Inc.: "In twenty-three years, I have never seen motor oil damage an engine." Accordingly, Defendants' requirement that consumers use only Castrol motor oils is an illegal tying provision under MMWA.[3]

30. Defendants are using the illegal tying provision to engage in anti-competitive business practices that hurt consumers. CarSense is using the tying provision to increase vehicle sales and oil change service revenue. BP Lubricants in using the tying provision to unlawfully capture a market of consumers who do not want to void their warranties and therefore use only Castrol products when changing the motor oil in their vehicles.

31. Plaintiffs seek to enjoin further sales of the warranties that include illegal tying provisions due to their uniform violation of MMWA.

---

[1] Automotive Oil Change Association, Comments re: Manguson-Moss Warranty Act Rule Review, at p. 7 (Oct. 24, 2011), *available at* https://www.ftc.gov/sites/default/files/documents/public_comments/16-cfr-parts-239-700-701-702-and-703-request-comments-concerning-interpretations-magnuson-moss/00021-80830.pdf.
[2] *Id.*
[3] *Id.*

32.     Defendants' common course of conduct caused Plaintiffs and the Class damages. Plaintiffs suffered damages by paying extra for Castrol motor oil. There may be many of Class members who have not used Castrol motor oil when changing the oil in their vehicles and have been told that as such the warranty on their vehicle is void. Accordingly, Plaintiffs and the Class are entitled to recover damages, costs, attorney fees, recession and/or other equitable relief as appropriate.

33.     Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

A.     Certify this action as a class action as stated here and appoint Plaintiffs' counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

B.     Declare that the warranties at issue include illegal tying provisions prohibited by the MMWA;

C.     Enjoin Defendants from further violations of the MMWA;

D.     Order that Defendant restore to Plaintiff and the Class all losses resulting from its violations of the MMWA;

E.     Award Plaintiffs reasonable attorney's fees and costs of suit incurred herein and/or for the benefit obtained for the Class;

F.     Order Defendants to pay prejudgment interest; and

G.     Award such other and further relief as the Court deems equitable and just.

DATED this 4th day of May, 2017.

By: _____
Gary F. Lynch (PA ID # 56887)
Todd D. Carpenter*

Edwin J. Kilpela, Jr.*
CARLSON LYNCH SWEET
 KILPELA & CARPENTER LLP
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone: (619) 756-6994
Facsimile: (619) 756-6991
Email:
glynch@carlsonlynch.com
tcarpenter@carlsonlynch.com
ekilpela@carlsonlynch.com

Michael McKay*
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone: (480) 428-0145
Facsimile: (866) 505-8036
mmckay@schneiderwallace.com

Michael K. Yarnoff*
KEHOE LAW FIRM
1500 JFK Blvd., Suite 1020
Philadelphia, Pennsylvania 19102
Telephone: (215) 792-6676
Facsimile: (215) 990-0701
Email: myarnoff@kehoelawfirm.com

*Attorneys for Plaintiffs*

*Pro Hac Vice application forthcoming