# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALISON LEARY & TIMOTHY LEARY, Individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | |
| McGOWEN ENTERPRISES, INC., Defendant. | : : | No. 17-2070 |

## MEMORANDUM

**Schiller, J.**                                                                     **October 15, 2018**

Alison and Timothy Leary argue that McGowen Enterprises included an illegal tying provision in a warranty that the Learys received when they purchased a vehicle from CarSense, a car dealership which was owned by McGowen at the time. They claim that the warranty required the Learys to use a certain brand of motor oil or risk having the warranty voided. The Learys filed a class action contending that McGowen's actions violated the Magnuson-Moss Warranty Act ("MMWA"). Following briefing on the Defendant's motion to dismiss and some discovery, the parties settled.

The parties now seek final certification of the class, as well as approval of the settlement. Class Counsel also filed a petition for attorneys' fees. For the reasons that follow, the motions for final approval of the settlement agreement, and for attorneys' fees and costs shall be granted.

## I.     BACKGROUND

### A.     Facts

According to the Learys, "McGowen sells automobiles with warranties that require consumers to use only premium Castrol motor oils, otherwise the warranty is void. McGowen's warranty is a per se violation of the MMWA's tying prohibition." (Am. Compl. ¶ 5.)

McGowen is a used car and truck dealer, using the name CarSense. (*Id*. ¶ 9.) CarSense also provides automobile maintenance and repair services, including oil and filter changes at each of its locations. (*Id*.)

On June 16, 2016, Alison and Timothy Leary bought a 2015 Volvo V60 Premier from CarSense for $30,545.91. (*Id*. ¶ 8.) The sale included a "Lifetime Engine Guarantee," a limited warranty that covered vehicle engines from mechanical failure or abnormal wear for as long as Plaintiffs' owned the vehicle. (*Id*.) The Lifetime Engine Guarantee was an important factor in the Learys' decision to buy the car from McGowen. (*Id*. ¶ 12.)

Timothy Leary took his car to Tolsdorf Oil Lube Express in Exton, Pennsylvania for an oil change. (*Id*. ¶ 13.) A service technician informed Timothy Leary that "since his vehicle was purchased from McGowen and backed by the Lifetime Engine Warranty that he was required to use Castrol motor oil and that the oil change would cost him approximately $40.00 more than if he used a comparable non-Castrol product. (*Id*.) Timothy Leary paid the additional money so as not to void the warranty. (*Id*.)

Plaintiffs believe that "McGowan has created an illegal tying agreement by requiring Plaintiffs to change the motor oil in their vehicle every 4,000 miles or 4 months with only Castrol products." (*Id*. ¶ 16.) This illegal tying arrangement forced individuals to pay more for Castrol products than they would pay for substantially similar products. (*Id*.) The Amended Complaint includes a single count for violation of the illegal tying provision of the MMWA.

B.   **History of the Litigation**

The original complaint, filed on May 5, 2017, named both BP Lubricants, which was alleged to be the producer and seller of Castrol, and CarSense as Defendants. The Amended

Complaint was filed on July 21, 2017, and named McGowen as the lone Defendant. Defendant filed a motion to dismiss for failure to state a claim on September 8, 2017, and following briefing on the issues, the Court denied the motion on October 12, 2017. The parties commenced discovery and entered into extensive settlement discussions. A motion to certify the class was filed on February 15, 2018. Prior to reaching a decision on that motion, however, the parties came to an agreement and Plaintiffs sought conditional class certification and preliminary approval of a settlement class. The Court granted Plaintiffs' request on April 17, 2018. Subsequently, notice to the class was provided, claims were reviewed and processed, and Plaintiffs now seek final approval of the settlement agreement, as well as attorneys' fees.

### C. Settlement Terms

The Settlement Class consists of "all consumers in the United States who, between May 5, 2013 and January 8, 2017, purchased a vehicle from Car Sense Inc. (now MEI) and accepted the Lifetime Engine Guarantee offered by Car Sense Inc." (Settlement Agreement and Release at 3.)

The proposed settlement agreement provided a number of forms of relief to the Class, as well as an incentive award to the named Plaintiffs. Under the settlement agreement, each claimant is entitled to a one-time cash payment of $30. (*Id*. at 4.) McGowen also agreed that it would not include a tying provision in any future warranties, nor would it would void the Lifetime Engine Guarantee of any class member for failing to use Castrol products during oil changes of the vehicles they bought from McGowen. (*Id*. at 4–5.) Plaintiffs also seek a $5,000 incentive award for the named Plaintiffs, as well as $280,000 in attorneys' fees and $10,000 in costs. (*Id*. at 5.)

In exchange for these remedies, Plaintiffs and each class member who did not timely exclude themselves from the settlement class agreed to release their claims against McGowen, should the Court approve the settlement. (*Id*. at 11.)

## II. DISCUSSION

### A. Settlement

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Because the settlement would bind class members, this Court may only approve the settlement upon a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "[T]he district court acts as a fiduciary who must serve as a guardian of the rights of absent class members . . . . [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). However, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *see also Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983). The law looks favorably upon class action settlements to conserve scarce judicial resources. *Gen. Motors*, 55 F.3d at 784.

The decision of whether a settlement is fair, reasonable, and adequate is guided by the nine-factor test enunciated in *Girsh*. The *Girsh* test directs the court to examine: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the

4

class action through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157. The Third Circuit Court of Appeals has expanded upon the *Girsh* factors to include several permissive and non-exhaustive factors: (1) the maturity of the underlying substantive issues; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

### 1. *Complexity, expense, and likely duration of the litigation*

The first *Girsh* factor looks at the time and money likely necessary if the litigation continued. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 320 (3d Cir. 2011).

Plaintiffs submit that McGowen would have raised a number of issues in its defense, arguing that: (1) the warranty did not require the use of Castrol motor oil; (2) McGowen never voided any warranty based on the failure to use Castrol motor oil; and (3) Plaintiffs could not prove causation. (Mem. of Law in Supp. of Pls.' Unopposed Mot. for an Order Granting Final Approval of Class Settlement [Pls.' Mem.] at 6.)

The Court agrees that in the absence of this settlement, the parties would face a lengthy and expensive discovery process. This process would have included fact and expert witnesses,

discovery on damages, and lengthy litigation on whether or not to certify a class. The Court also suspects that regardless of the outcome of the trial, post-trial motions and an appeal would follow.

Although this case is not particularly complicated, it is likely that this case would be costly to prosecute and would proceed well into the future. Accordingly, the Court finds that this factor weighs in favor of approving the settlement.

### 2. *Reaction of the class to the settlement*

Based upon the number of objectors and their arguments, does the class support the settlement? *Prudential*, 148 F.3d at 318. Silence from the class generally indicates agreement, although "the practical realities of class actions ha[ve] led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *Gen. Motors*, 55 F.3d at 812.

The class administrator sent email notice to 31,086 class members whose email addresses were available and mailed a postcard notice to 1,192 class members who did not have a valid email address. (Pls.' Mem. Ex. 1 [Hack Decl.] ¶ 7.) No objections were received and only two requests for exclusion from the class were received. (*Id.* ¶¶ 8–9.) This response (or, rather, lack thereof) weighs in favor of approving the settlement.

### 3. *Stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor considers the current stage of the proceedings and the lawyers' knowledge of the strengths and weaknesses of their case. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813; *see also In re Cendant Corp. Litig.*, 264 F.3d 201,

235 (3d Cir. 2001) ("This factor captures the degree of case development that class counsel have accomplished prior to settlement.").

Counsel has had ample time and information to learn the strengths and weaknesses of the case. The parties conducted significant discovery and briefed a number of issues. The Court is convinced that this factor weighs heavily in favor of approving the settlement.

### 4. *Risks of establishing liability and damages*

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Gen. Motors*, 55 F.3d at 814. The more risks that Plaintiffs may face during litigation, the stronger this factor favors approving a settlement. *See Prudential*, 148 F.3d at 319. In examining this factor, the court may "give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997).

It would be difficult for Plaintiffs to establish liability in this case, as Defendant has raised a number of defenses that could allow it to avoid liability. Defendant also takes issue with Plaintiffs' damages assessment. Defendant also claims that its warranty did not include an illegal

7

tying provision. Given these hurdles, the Court finds that these factors weigh heavily in favor of approving the settlement.

> 5. *Risk of maintaining the class action through the trial*

"Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable." *Prudential*, 148 F.3d at 321.

The parties have not pointed the Court to any specific argument beyond the general legal principle that class certification is always open to review. This factor is neutral.

> 6. *Ability of Defendants to withstand a greater judgment*

This factor takes on its greatest role in those cases in which the defendant's inability to pay led to a lesser financial settlement than would ordinarily be awarded. *See Krimes v. JPMorgan Chase*, Civ. A. No. 15-5087, 2017 WL 2262998, at *9 (E.D. Pa. May 24, 2017).

The Court has little information in the record to form a conclusion about this factor. Although the Court has no reason to believe that a greater judgment would pose an economic hardship for McGowen, the Court also has no reason to believe that McGowen's continued solvency should weigh against approving the settlement. This factor is therefore neutral.

> 7. *Range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation*

The last two *Girsh* factors assess "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, . . . compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322. In conjunction, these two factors ask "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). "Notably, in conducting the analysis, the court must guard against demanding too large a

settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Sullivan*, 667 F.3d at 324.

Plaintiffs contend that this "is a very favorable settlement for the Class." (Pls.' Mem. at 11.). The Court agrees that class members will receive a tangible benefit. Also, importantly, Defendant has agreed to injunctive relief that ensures both that the warranty at issue here remains intact and that future warranties do not include an improper tying provision. The injunctive relief here is important to current class members. Weighed against the very real possibility that class members would receive nothing, these factors weigh in favor of approval of the settlement.

### 8. Prudential *factors*

The Court also concludes that the *Prudential* factors weigh in favor of approving the settlement. First, this litigation has proceeded far enough that the lawyers and this Court can assess the possible outcome of a trial on the merits. Second, there are no objections to the settlement and only two class members opted-out of the settlement class. Third, as will be discussed below, the request for attorneys' fees is reasonable. Finally, the procedure for processing individual claims is fair and reasonable.

### B. Attorneys' Fees

Class Counsel seeks an attorneys' fee award of $280,000 for work on this litigation.

Rule 23(h) of the Federal Rules of Civil Procedure authorizes an award of "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The court must direct a thorough review of the request for fees. *Gen. Motors*, 55 F.3d at 819. The party requesting fees must demonstrate the reasonableness of its request and therefore must submit evidence to support its request. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

There are two methods for calculating attorneys' fees in a class action: the percentage-of-recovery method and the lodestar method. *Prudential*, 148 F.3d at 333. The lodestar method is used in statutory-fee-shifting cases. *Id.* (noting that lodestar method "is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation"). The percentage-of-recovery method is preferred when the fee is to be paid from a common fund "because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

The MMWA provides that a consumer who prevails under the law "may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution" of the litigation, unless the court decides that an award of attorneys' fees would be inappropriate. 15 U.S.C. § 2310(d)(2). Accordingly, the Court will employ the lodestar method to determine the proper award for Class Counsel.

The lodestar is calculated by multiplying the number of hours spent by counsel by a reasonable hourly rate. *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 734 (E.D. Pa. 1995). A court determines a reasonable hourly rate by assessing the experience and skill of the prevailing party's attorneys and by looking at the market rates in the relevant community for lawyers of reasonably comparable skill, experience, and reputation. *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *see also Student Pub. Interest Research Grp. of N.J., Inc. v. AT & T Bell*

*Labs.*, 842 F.2d 1436, 1450 (3d Cir. 1988). To arrive at a reasonable number of hours worked, the court must excise those hours deemed excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434. If counsel sustains its burden to demonstrate the claimed rates and the number of hours worked are reasonable, the lodestar produces a presumptively reasonable attorneys' fee. *Maldonado*, 256 F.3d at 184.

Counsel has detailed 444.4 hours worked through June 15, 2018. These hours include time spent by attorneys and paralegals investigating the claims, preparing the complaint and amended complaint, preparing the opposition to the motion to dismiss, preparing for and attending a pretrial conference, preparing written discovery and responses, conducting and defending depositions, drafting a class certification motion, and negotiating a settlement. Class Counsel recently filed a supplemental declaration detailing an additional 11.6 hours worked by Mark Johnson in preparing for the final approval of the settlement. (Supplemental Decl. of Mark Johnson in Supp. of Mot. for an Award of Reasonable Attorneys' Fees, Costs and a Service Award [Johnson Supplemental Decl.] ¶ 4.) The Court has reviewed Class Counsel's submissions and deems the hours spent on this litigation to be reasonable.

Additionally, the request for fees details the experience of the lawyers involved in this litigation. This Court has reviewed the rates requested based on the experience of the individuals involved in litigating this case. The rates requested by the lawyers and paralegals representing the Class are within the range of rates approved by courts in this District and thus reflect the prevailing market rate for the community. Quite simply, the rates sought are commensurate with rates awarded in other cases. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 216–17 (E.D. Pa. 2011) (accepting rates of $125 to $175 for paralegals and $485 to $700 for

partners); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 260 (E.D. Pa. 2011) (accepting rates of $650 for partners and $175–$225 for paralegals in a consumer class action litigation) (citing *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 422 (E.D. Pa. 2010)).

The Court concludes that Class Counsel's request for $280,000 in attorneys' fees is reasonable.

D.     **Costs**

Class Counsel seeks $10,000 for costs and litigation expenses necessary for the investigation, prosecution, and settlement of this litigation. The relevant law here permits for a consumer to recover "the aggregate amount of cost and expenses . . . determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action." 15 U.S.C. § 2310(d)(2).

Class Counsel has documented the relevant expenses here, and the Court concludes that Plaintiffs are entitled to recover those expenses.

E.     **Incentive Award**

The settlement agreement provides for a $5,000 incentive award to be shared by the Learys. Plaintiffs argue that "[t]he awards are appropriate in light of the efforts undertaken by both plaintiffs, including the time spent responding to written discovery and cooperating with class counsel in prosecuting the case and negotiating the Settlement Agreement." (Pls.' Unopposed Mot. for an Award of Reasonable Att'ys' Fees, Costs and Payment of a Service Award at 13–14.)

Incentive awards to class representatives lie within the discretion of the court and may be awarded for the benefit conferred on the class. *See Hall v. Best Buy Co.*, 274 F.R.D. 154, 173

(E.D. Pa. 2011); *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94–3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995). When assessing such awards, courts examine the financial, personal, and reputational risks to the representative, his or her involvement in the litigation, and the degree to which he or she benefitted as a class member. *Hall*, 274 F.R.D. at 173; *In re U.S. Biosci. Sec. Litig.*, 155 F.R.D. 116, 121 (E.D. Pa. 1994).

The Learys have contributed significantly to the favorable outcome of this litigation. They provided substantial assistance to their lawyers in investigating the claims, filing the action, and settling the case. (Decl. of Named Pls. Alison Leary & Timothy Leary ¶¶ 9–14.) They have earned an incentive award here.

### III. CONCLUSION

Having reviewed the record before the Court and the parties' submissions, the Court concludes that the requirements of Rule 23 have been satisfied, and that the settlement is fair, reasonable, and adequate. Similarly, the request for attorneys' fees and costs is also reasonable. The Court therefore grants the motion to approve the settlement and for attorneys' fees and costs, including an incentive award for the Learys. An Order approving the settlement, the petition for attorneys' fees and costs will be docketed separately.